IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff,                   No. 2:11-cr-00505 KJN

    v.

DUSTIN BOLE,

           Defendant.           <u>ORDER</u>

_____/

On August 22, 2012, defendant Dustin E. Bole ("defendant") filed a Motion for Release Pending Appeal ("Motion").  (Motion, Dkt. No. 75.)  The United States filed an opposition brief on August 27, 2012 ("Opposition").  (Opposition, Dkt. No. 80.)

The matter came on for hearing before the undersigned on August 29, 2012.  (Minutes, Dkt. No. 82.)  Attorney Ann McClintock appeared on behalf of defendant.  Attorneys Nicholas Fogg and Christopher Hales appeared on behalf of the United States.  For the reasons discussed during the hearing and within this order, defendant's motion is denied.

I.      <u>BACKGROUND</u>

In March 2012, defendant was convicted of the crime of "Theft of Government Property" in violation of 18 U.S.C. § 641.  (Verdict, Dkt. No. 58.)  Defendant was sentenced to eight months in prison.  (Dkt. No. 67.)  Defendant has appealed the conviction to United States

1  Senior District Judge Karlton.  (Notice of Appeal, Dkt. No. 68.)

2         Defendant now argues that he should be released pending his appeal under Federal

3  Rules of Criminal Procedure 47(c), 58(g)(3), and 18 U.S.C. § 3143(b).[1]

4         The jury instruction that was given at the close of defendant's trial, and is at issue

5  in defendant's appeal, reads:

6

7              The defendant is charged in Count One of the
               information with theft of government money in
8              violation of Section 641 of Title 18 of the United States
               Code.  In order for the defendant to be found guilty of
9              that charge, the government must prove each of the
               following evidence elements beyond a reasonable
10             doubt:  First, the defendant knowingly stole money with
               the intention of depriving the owner of the use or
11             benefit of the money; second, the money belonged to
               the United States or any department or agency thereof.

12  (Trial Transcript dated March 14, 2012, Exh. B to Motion at 688.)

13  ////

14  ─────────────────

15       [1] 18 U.S.C. § 3143(b) provides:

    Release or detention pending appeal by the defendant.
16  (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been
    found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or
17  a petition for a writ of certiorari, be detained, unless the judicial officer finds--
    **(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to**
18  **the safety of any other person or the community if released under section 3142(b) or (c) of this**
    **title; and**
19  **(B) that the appeal is not for the purpose of delay and raises a substantial question of law or**
    **fact likely to result in--**
20  **(i) reversal,**
    **(ii) an order for a new trial,**
21  **(iii) a sentence that does not include a term of imprisonment, or**
    **(iv) a reduced sentence to a term of imprisonment less than the total of the time already served**
22  **plus the expected duration of the appeal process.**
    If the judicial officer makes such findings, such judicial officer shall order the release of the person
23  in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in
    subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the
24  expiration of the likely reduced sentence.
    (2) The judicial officer shall order that a person who has been found guilty of an offense in a case
25  described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a
    term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.
26  18 U.S.C. § 3143(b) (emphasis added).

                                              2

1    Defendant argues that it was plain error not to instruct the jury that theft of

2    government property must be "willful" and it was also plain error not to define "stole" for the

3    jury.  (Motion at 8-11.)  Defendant did not raise either objection during trial and did not propose

4    either instruction during trial, so review is on the "plain error" standard.[2]  (Id.)

5    II.    LEGAL STANDARD

6    The release or detention of a defendant pending his or her appeal is controlled by

7    18 U.S.C. § 3143(b) ("Section 3143(b)").  Relevant here, Section 3143(b) provides that a

8    defendant shall be released pending appeal pursuant to 18 U.S.C. § 3142(b) or (c) if the court

9    finds: (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to

10   the community; and (2) that the appeal is not for purposes of delay and (3) raises a substantial

11   question of law or fact likely to result in reversal or a new trial.  18 U.S.C. § 3143(b).

12   III.   DISCUSSION

13   A.   *Not Likely To Flee Or Pose A Danger To The Community*

14   Defendant notes that "this court has already found that Bole is not a flight risk and

15   that he does not pose a danger to the community."  (Motion at 7 (citing Dkt. No. 55 at 3).)  The

16   undersigned finds defendant to be unlikely to flee or to pose a danger to the community.

17   B.   *Appeal Not For Purposes Of Delay*

18   Defendant urges that the appeal was not filed for purposes of delay, noting that

19   District Judge Karlton has set a briefing schedule on the appeal that has oral argument set for

20   October 2, 2012, which is after the current self-surrender date.  (Motion at 7.)  Defendant intends

21   to file his opening appellate brief on or before the deadline of September 10, 2012.  (Id.)  During

22

23   [2]  "Plain error is error that is clear under the law and that affects substantial rights. [The
     defendant] has the burden to establish that the error was prejudicial."  U.S. v. Campbell, 42 F.3d
24   1199, 1204 (9th Cir. 1994).  "If these elements are established, the court of appeals should correct
     a plain error affecting substantial rights if it 'seriously affect[s] the fairness, integrity or public
25   reputation of judicial proceedings.' "  Id. (citing cases). "In applying the plain error standard we
     consider all circumstances at trial including the strength of the evidence against the defendant."  Id.
26   (citing cases).

1  the hearing, defendant's counsel also represented that defendant had not been informed about the

2  motion at issue.  The undersigned finds that the appeal was not for purposes of delay.

3       C.    *Raises A Substantial Question Of Law Or Fact Likely To Result In Reversal*

4       1.    *Legal Standard Regarding A "Substantial Question"*

5       In <u>U.S. v. Handy</u>, the Ninth Circuit Court of Appeals clarified that, "properly

6  interpreted, 'substantial' defines the level of merit required in the question presented and 'likely

7  to result in reversal or an order for a new trial' defines the type of question that must be

8  presented." <u>U.S. v. Handy</u>, 761 F.2d 1279, 1280-81 (9th Cir. 1985); <u>accord</u> <u>U.S. v. Garcia</u>, 340

9  F.3d 1013, 1021 (9th Cir. 2003) ("The defendant, in other words, need not, under <u>Handy</u>, present

10  an appeal that will likely be successful, only a non-frivolous issue that, if decided in the

11  defendant's favor, would likely result in reversal or could satisfy one of the other conditions.")

12       The phrase does *not* mean that defendant can demonstrate that he will "probably

13  prevail on appeal." <u>Handy</u>, 761 F.2d at 1280-81.  "Congress did not intend to limit bail pending

14  appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that

15  the appeal will probably result in reversal or an order for a new trial.  The legislative history

16  states that the purpose of the statute is to require 'an affirmative finding that the chance for

17  reversal is substantial.'" <u>Id.</u> at 1280-81.  A showing that the chance of reversal is substantial is,

18  of course, very different from a showing that reversal is more likely than not." <u>Id.</u>  "Finally,

19  requiring the defendant to demonstrate to the district court that its ruling is likely to result in

20  reversal is tantamount to requiring the district court to certify that it believes its ruling to be

21  erroneous.  Such an interpretation of the Act would make a mockery of the requirement of Fed.

22  R. App. P. 9(b) that the application for bail be made in the first instance in the district court." <u>Id.</u>

23       "Historically the phrase 'substantial question' has referred to questions that are

24  'fairly debatable.'  Included within this definition have been questions that are novel and not

25  readily answerable." <u>Id.</u> "The question may be 'substantial' even though the judge or justice

26  hearing the application for bail would affirm on the merits of the appeal.  The question may be

1   new and novel.  It may present unique facts not plainly covered by the controlling precedents.  It

2   may involve important questions concerning the scope and meaning of decisions of the Supreme

3   Court.  The application of well-settled principles to the facts of the instant case may raise issues

4   that are fairly debatable."  Id.

5          Thus, in the Ninth Circuit, a "substantial question" is one that is "fairly

6   debatable," [citations] or "fairly doubtful," [citation].  Id. at 1283 (citations omitted).  "In short, a

7   'substantial question' is one of more substance than would be necessary to a finding that it was

8   not frivolous."  Id. (citing cases).

9          2.   *Analysis*

10          Defendant urges that, under the United States Supreme Court case of Morissette,

11   it was error not to instruct the jury that theft of government property must be "willful," and it was

12   also error not to define "stole" for the jury.  (Motion at 8-11 (citing Morissette v. United States,

13   342 U.S. 246 (1952)).)

14          Neither argument is well-taken, as neither argument appears to present issues that

15   are "fairly debatable" under Handy.  See Handy, 761 F.2d at 1280-83.  As described below, the

16   absence of the term "willful" notwithstanding, the instruction given to the jury (Model

17   Instruction 8.39) required the jury to find that the defendant acted wrongfully and included the

18   requisite mens rea requirement under Morissette.

19          a.   **"Willful"**

20          First, Morissette does not stand for the proposition that the term "willful" belongs

21   in an instruction as to theft of government property.  Morissette v. United States, 342 U.S. 246

22   (1952).  Instead, Morissette stands for the proposition that a Section 641 violation requires a

23   mens rea element; in other words, that the defendant knew he was *doing something wrongful*.  Id.

24   at 275-76.  Under Morissette, as long as an instruction conveys the concept that the defendant

25   must have known he was doing something wrongful, Morissette's mens rea component is

26   satisfied.

5

1    The instructions given in the instant case sufficiently conveyed the requisite mens

2    rea element.  The instruction required the jury to find that the defendant "knowingly stole" the

3    property of another "with the intention of depriving the owner" of the use of the property.

4    (Model Instruction 8.39.)[3]  In other words, here the jury did not have to find that the defendant

5    merely intended to take possession of another's property, which was the instruction erroneously

6    given in Morissette.  (See Morissette, 342 U.S. at 275-76 (finding that the district court erred in

7    framing the instruction to express the question, "Did he intend to take the property?")).  Here, the

8    jury was instructed that the defendant had to have acted "with the intention of depriving the

9    owner of" its property when the defendant "knowingly stole" the property.

10        b.    **"Stole"**

11    Second, Morissette does not state that it is error not to define the term "stole" for

12    the jury.  Instead, Morissette holds that Section 641 instructions must express a mens rea

13    element, that is, that the defendant actually knew he was doing something unlawful rather than

14    merely intending to take given property.  Morissette, 342 U.S. at 275-76.

15        Again, the instruction in this case included a mens rea requirement: that the

16    defendant "knowingly stole" the property of another "with the intention of depriving the owner"

17    of the use of the property. Accordingly, the jury did not have to find that the defendant merely

18    took possession of another's property, as with the erroneous instruction in Morissette.  Id.

19        Regarding defendant's argument that the term "steal" should have been defined

20    for the jury, the Ninth Circuit Model instructions do not include a definition of that term.  The

21    given instruction conveys the concept by elaborating that the stealing includes "taking the

22    property of another," thereby essentially defining the term "steal."  Further, a common sense

23    reading of the word "steal" conveys the concept of a wrongful act.  Moreover, while defendant

24    

25    [3]  In the instant case, the Section 641 instruction used was identical to the Ninth Circuit
     Model Instruction (Model Instruction 8.39).  Model Instruction 8.39 does not use the term
26    "willfully."

1    cites the instructions the undersigned gave in the <u>Colwell</u> case and argues that the instructions to

2    the jury defined "steal" in that case, the undersigned gave the jury that definition because

3    defendant Colwell requested a definition of "stole."  (<u>U.S. v. Colwell</u>, 2:10-cr-00256, Dkt. No.

4    33 at 6 (Defendant's Second Amended Proposed Jury Instructions, requesting defendant's

5    definition of "stole" as "the term 'stole' means acquired dishonestly.")[4]  Unlike the defendant in

6    <u>Colwell</u>, who requested her own definition of the word "stole," defendant Bole did not request

7    that the jury be instructed as to that word.  Further, as discussed during the hearing, the facts of

8    the <u>Colwell</u> case differed from the facts of the instant case.  The fact that a defendant in one

9    particular case under Section 641 requested and received a definition of "stole" does not make it

10   error not to define that word for the jury in every Section 641 case.

11         3.    ***In <u>Campbell</u>, The Ninth Circuit Held That The Model Instruction***
12               ***For Violations of 18 U.S.C. § 641 Sufficiently Includes A Mens Rea Element***

13        In <u>Campbell</u>, the defendant was convicted of two crimes: theft of government

14   property under Section 641, and depredation of government property.  <u>U.S. v. Campbell</u>, 42 F.3d

15   1199, 1204 -1205 (9th Cir. 1994).  The court in <u>Campbell</u> addressed the Ninth Circuit Model

16   instruction "[o]n the elements of 18 U.S.C. § 641," which read:

17
18               The government must prove each of the
                 following elements beyond a reasonable doubt;
19               First, the defendants stole property of value with
                 the intention of depriving the owner of the use or
20               benefit of the property; and Second, the property
                 belonged to the United States. If you decide that
21               a defendant is guilty, you must then decide
                 whether the government has proved beyond a
22               reasonable doubt that the value of the property
                 was more than $100.
23

24        [4]  In <u>Colwell</u>, after arguments by the parties, and because of the unique facts in that case, the
     court crafted its own definition of "stole" by lifting it directly from <u>Morissette</u>, and defendant's
25   proffered instruction (i.e., that "stole" means "acquired dishonestly" was not ultimately used.
     (<u>Compare</u> Colwell's proffered "stole" instruction, Dkt. No. 33 at 6 <u>with</u> instruction ultimately used,
26   Dkt. No. 60 at transcript page 368.)

1   Id. at 1204-05.  The defendant in Campbell argued that this instruction lacked a requirement of

2   criminal intent, but the court held simply that, "[i]n the absence of objection, it was not plain

3   error for the district court to use these instructions."  Id. at 1205.  In sum, the court in Campbell

4   upheld the challenged Section 641 instruction even though it lacked the term "willfully."

5         In defendant's Reply brief and during the hearing, defendant argued that

6   Campbell is distinguishable from the instant case.  (Reply, Dkt. No. 81 at 2-3.)  Defendant

7   attempts to distinguish Campbell because "the Campbell issue challenges the failure to define

8   'willfulness.'  This is not Bole's issue on appeal."  (Reply at 2.)  Contrary to defendant's reading

9   of Campbell, that case is analogous.  The Court of Appeals upheld the Section 641 instruction

10   even though it did not include the term "willfully" — the very term defendant Bole argues should

11   have been included in his Section 641 instruction.  See Campbell, 42 F.3d at 1204-05.

12   Defendant also erroneously suggests that, in Campbell, the jury instruction as to Section 641 used

13   the term "willfully."  (Reply at 2.)  Defendant is mistaken.  As described herein, there were two

14   different crimes charged in Campbell and thus, two different jury instructions.  Campbell, 42

15   F.3d at 1204-05.  The jury instruction on Section 641 did *not* include the term "willfully;" it was

16   a jury instruction on depredation of government property that included the term.  Id.  Defendant

17   has not compellingly shown Campbell to be distinguishable.

18         In the instant case, the instructions on Section 641 were identical to those upheld

19   in Campbell, except that they went a step even further as to mens rea and included the term

20   "knowingly."  Accordingly, it cannot be said that defendant's argument on appeal presents a

21   "fairly debatable" question of law that meets the Handy standard.

22       4.   ***In Derington, The Ninth Circuit Clarified That The Terms "Stole" And "With***

23           ***The Intention of Depriving The Owner"Are Sufficient To Instruct The Jury Regarding Mens Rea Under Morissette***

24         The Ninth Circuit Court of Appeals has held that instructing a jury that the

25   "defendant 'stole property' and did so 'with the intention of depriving the owner of the use or

26   benefit of the property' is sufficient to put at issue whether or not a defendant had mens rea under

1    Morissette." U.S. v. Derington, 229 F.3d 1243, 1248-49 (9th Cir. 2000).

2              Similar to the facts of Campbell, in Derington the defendant was convicted of two

3    crimes: theft of government property under Section 641, and depredation of government

4    property.  Defendant Derington appealed his conviction on the latter offense, arguing that the jury

5    instructions did not require the jury to find that the defendant acted with mens rea.  The jury had

6    been instructed that a conviction required the defendant "willfully" engaged in depredation; the

7    defendant argued that the instruction should have included the word "knowingly."

8              The Ninth Circuit Court of Appeals first found that the defendant was correct: the

9    crime of depredation requires a "knowing" level of mens rea, not simply willfulness.  Derington,

10   229 F.3d at 1248-49.  However, the Court of Appeals found the error on the depredation

11   instruction to be harmless for two reasons.  First, the instructions for both offenses (theft and

12   depredation), when taken together, required the jury to find the requisite mens rea.  Second, by

13   convicting the defendant of the Section 641 offense, the jury necessarily found that the defendant

14   possessed the requisite mens rea.  Id.  Both reasons hinged on the Section 641 instructions, which

15   the Court of Appeals found to have properly put in issue the necessary level of mens rea.

16             In Derington, the instructions on count one (i.e., Section 641) were:

17                     In order for the defendant to be found guilty of
                       [violating § 641], the Government must prove each of
18                     the following elements beyond a reasonable doubt:
                       First, the defendant stole property of value with the
19                     intention of depriving the owner of the use or benefit of
                       the property; and
20                     Second, the property belonged to the United States.
                       If you decide that the defendant is guilty, you must then
21                     decide whether the Government has proved beyond a
                       reasonable doubt that the value of the property was
22                     more than $100.

23   Id. at 1248-49.  The court in Derington found that "[t]he instructions explicitly direct the jury that

24   it must find that Derington 'stole property' and did so 'with the intention of depriving the owner

25   of the use or benefit of the property.'  The instructions were sufficient to put at issue whether or

26   not Derington had mens rea."  Id.

1    Thus, the court in <u>Derington</u> recognized that under <u>Morissette</u>, Section 641

2 requires a mens rea element; namely, that the defendant knew he "doing something unlawful."

3 <u>Id.</u> at 1247-48.  The Court of Appeals held that instructing the jury that the "defendant 'stole

4 property' and did so 'with the intention of depriving the owner of the use or benefit of the

5 property' was sufficient to put at issue whether or not the defendant had mens rea under

6 <u>Morissette</u>."  <u>Id.</u> at 1248-49.[5]

7    In sum, the court in <u>Derington</u> held that an instruction as to Section 641 that

8 *includes* the terms "stole property" with the "intention of depriving the owner of the use or benefit

9 of the property" is sufficient to convey the mens rea requirement to the jury in accordance with

10 <u>Morissette</u>.  <u>Id.</u>  Indeed, while the term "willfully" was *insufficient* to convey the mens rea

11 required by <u>Morissette</u>, the terms "stole" and "intention of depriving the owner" were *sufficient* to

12 remedy that error.  <u>Id.</u>

13    In the instant case, defendant argues that the court erred in not including the term

14 "willfully" in the Section 641 instruction in light of <u>Morissette's</u> pronouncement that "[t]o steal

15 means to take away from one in lawful possession without right with the intention to keep

16 wrongfully."  <u>Morissette</u>, 342 U.S. at 271. However, the court in <u>Derington</u> clarified that the term

17 "willfully" is actually insufficient to convey the requisite mens rea element under <u>Morissette</u>.  The

18

19    [5]  The court in <u>Derington</u> held:

20    "The instructions explicitly direct the jury that it must find that Derington 'stole property' and did so 'with the intention of depriving the owner of the use or benefit of the property.' The

21 instructions were sufficient to put at issue whether or not Derington had mens rea. Having found Derington guilty of count one, the jury necessarily found that he knew he was acting unlawfully not

22 only in stealing the property but in committing depredations upon it.  We reach this conclusion only after considering <u>Morissette v. United States</u>, 342 U.S. 246, 72 S. Ct. 240, 96 L.Ed. 288 (1952).

23 <u>Morissette</u> requires that a violator of § 641 be shown to have mens rea; that is, that the violator knows that he is doing something unlawful. The instructions held to be defective in that case

24 required the jury only to answer the question, Did the defendant intend to take the property? <u>Id.</u> at 275–76, 72 S. Ct. 240. Here the jury, convicting Derington of count one, found that he stole, that is

25 knowingly appropriated, property of an owner who was other than himself. Any deficiency in the instruction on count two [depredation] that resulted from a lack of mens rea instruction was,

26 therefore, harmless."  <u>Derington</u>, 229 F.3d at 1248-49.

10

1    court in Derington held that instructing a jury that the defendant having "stole" the "property of

2    another with the intention of depriving the owner" is sufficient under Morissette.  Derington, 229

3    F.3d at 1248-49.  Accordingly, consistent with Derington, the Section 641 instruction in the

4    instant case was not erroneous— the instruction used the exact terms the court in Derington

5    deemed sufficient to instruct on mens rea under Morissette.  Indeed, the instruction went the

6    *additional* step of including the term "knowingly," which further clarified the need for a guilty

7    mind in order to convict under Section 641.

8         IV.    CONCLUSION

9              Given the foregoing, defendant has not met his burden of showing that a failure to

10   instruct the jury regarding the terms "willfully" and "stole" present a "fairly debatable" issue of

11   law.  These issues are not "fairly debatable" under Handy given that: (1) Morissette does not

12   expressly compel the use of the term "willfully" in a Section 641 instruction and does not

13   expressly require defining the word "stole" for the jury; (2) the instruction in this case expressed

14   the need to find mens rea given use of the terms "stole," "property of another with the intent to

15   deprive," *and* "knowingly"; (3) the instruction used was the unaltered Ninth Circuit Model

16   Instruction, which did not include the word "wilfully" and did not define "stole"; (4) Campbell

17   and Derington, which are both binding Ninth Circuit Court of Appeal authorities, expressly clarify

18   that a Section 641 instruction with the terms "stole" and "with the intention of depriving the

19   owner of the use and benefit of the property" is *sufficient to express the mens rea requirement*

20   *espoused in Morissette*, and the instruction in the instant case included both of these elements *and*

21   the additional requirement that defendant needed to act "knowingly," further highlighting the

22   mens rea needed for the crime.  Accordingly, because it cannot be said that defendant's argument

23   presents a "fairly debatable" legal issue, defendant's Motion is denied.

24   ////

25   ////

26   ////

1       In light of the foregoing, IT IS HEREBY ORDERED that:

2       Defendant's Motion For Release Pending Appeal (Dkt. No. 75) is denied.

3 DATED:  August 30, 2012

4

5

6 KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26